## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Knight                                          Civil Action No. 6:15-cv-1808

versus                                          Judge S. Maurice Hicks

Knight, et al                          Magistrate Judge Carol B. Whitehurst

### REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion To Dismiss
Complaint, First Supplemental and Amending Complaint, and Second Supplemental and
Amending Complaint filed by defendant, Mark E. Knight ("Knight") [Rec. Doc. 52] and
Motion To Dismiss Original, First and Second Supplemental and Amending Complaints filed
by defendant Jason Kinch  [Rec. Doc. 53] (collectively referred to as "Defendants")[1] a
Consolidated Opposition Memorandum filed by Plaintiff, Bryan Knight ("Plaintiff") [Rec.
Doc. 61] and a Reply filed by Knight [Rec. Doc. 65]. For the reasons that follow, the
undersigned will recommend that the Motions be denied.

### I. Factual Background

Plaintiff's Second Supplemental and Amending Complaint (hereinafter the
"Complaint"), *R. 47,* alleges:

Plaintiff and Knight, along with another sibling, own equal shares in Knight Oil Tools
("KOT") and Knight became CEO of KOT at some point after 2002. *R. 1, ¶ 8.* Thereafter,
Knight began engaging in a course of lavish and uncontrolled spending for his personal

---

[1] Kinch's Motion To Dismiss is identical to the Motion To Dismiss filed by Knight. Thus, the
Court will address the motions together as filed by "Defendants."

benefit to which Plaintiff voiced his objections and concerns. *Id. at ¶ 10.* Knight sought to obtain Plaintiff's interest in KOT in order to have controlling interest in the business and to silence any further objection to his lavish spending. *Id. at ¶ 11.* After Plaintiff refused to transfer the majority of his ownership interest, Knight concocted a scheme to silence Plaintiff and obtain the majority of Plaintiff's ownership interest in KOT by having Plaintiff arrested on felony drug charges. *Id. at ¶ 12.*

To accomplish these goals, Knight enlisted the help of Louisiana State Trooper Corey Jackson ("Jackson"), Lafayette Parish Sheriff's Deputy Jason Kinch ("Kinch"), who was assigned to the Metro Narcotics Task Force, and an employee of KOT, Russell Manuel ("Manuel). *Id. at ¶ 13.* Plaintiff alleges that the association-in-fact of Knight, Jackson, Kinch and Manuel with KOT, a legitimate business, constitutes an enterprise under RICO. *Id.* He further alleges that each member of the enterprise played a different role in the scheme and each acted in the ordinary course of affairs as separate individuals, outside of the scheme. *Id.* The pattern of racketeering activity, however, was conducted by the defendants in concert with each other in a coordinated and organized fashion to carry out the scheme. *Id.*

The association-in-fact had several purposes, one of which was to generate criminal charges against Plaintiff thereby placing Plaintiff in a situation conducive to Knight acquiring Plaintiff's interest in KOT. *Id. at ¶ 14.* The acts in furtherance of this purpose took place from April 14, 2014 until after the filing of the original complaint on June 3, 2015. *Id.* Other purposes of the association-in-fact was to have KOT provide the funds and resources necessary to carry out the scheme, including paying for the equipment utilized in the scheme

2

and funding the bribes paid to Kinch and Jackson, payment to Manual and the gifts to all co-conspirators for their roles in the scheme, *Id. at ¶ 15*; to generate false "business expenses" for KOT by classifying all of the equipment used in the scheme and all of the funds paid to the co-conspirators as business expenses of KOT, resulting in falsified expenses reported by KOT for tax purposes, *Id. at ¶ 16*; and, to cover up and perpetuate the actions described by submitting false reports to law enforcement, planting drugs, intentional omissions, intentional destruction and spoliation of evidence, witness tampering, witness intimidation, falsifying business records, falsifying business expenses, extortion, and threatening Plaintiff with financial ruin, *Id. at ¶ 17.*

Plaintiff alleges that each of the co-defendants enlisted to assist Knight in the scheme conspired with the other to accomplish these goals and was promised and received substantial consideration to accomplish them. *Id. at ¶ 18.* The related expenses and costs of the association-in-fact were paid for in whole or in part by KOT, a legitimate enterprise, whose resources and employees were also utilized in carrying out the scheme. *Id.*

As early as April 14, 2014, Knight and the other defendants began to implement the plan to coerce Plaintiff to transfer his interest in KOT by: (1) setting up a surveillance program on Plaintiff, hoping to catch him in an unlawful act and use their police power to make a pre-textual stop; (2) installing a GPS tracking device on Plaintiff's vehicle, thereby committing criminal trespass and criminal mischief and violating Plaintiff's constitutional rights to privacy and to be free from unreasonable searches and seizures; (3) attempting to force Plaintiff out of his residence to make a pre-textual stop by cutting his electrical line but

3

were thwarted, thereby committing criminal trespass, criminal mischief, and criminal destruction of property; (4)  obtaining illegal drugs and then placing them in a magnetic box under Plaintiff's vehicle on or about June 4, 2014, while Plaintiff was attending a mediation with Knight; (6) Knight then communicating Plaintiff's whereabouts to Manuel and Jackson who caused an anonymous call to be made to the Metro Narcotics hotline reporting that Plaintiff's vehicle was carrying illegal narcotics underneath the vehicle; (7) Manuel and Jackson contacting Kinch, who was in Florida on vacation, and Kinch making a call to Metro Narcotics to make the stop and arrest of Plaintiff while on a simultaneous conference call with Jackson and Manuel who were following Plaintiff's vehicle; (8) Plaintiff was stopped, his vehicle searched, the drugs found, arrested and charged with unlawful possession of the narcotics planted by defendants. *Id. at ¶¶ 19–25.*

Plaintiff further alleges that within weeks of Plaintiff's arrest, Knight issued payments to Manuel, Jackson, and Kinch for their services in the arrest of Plaintiff, significant portions of which were paid or provided through KOT.  *Id. at ¶ 26.* One or more of the defendants became aware of a KOT employee's knowledge of the scheme and Manuel threatened the employee with bodily harm if he went to the authorities, constituting extortion and witness intimidation. *Id. at ¶ 27.* After June 3, 2015, Knight threatened Plaintiff with dire economic consequences in the event Plaintiff continued to prosecute this litigation or failed to dismiss the lawsuit. *Id.* Knight told Plaintiff he could "take care" of the drug charges in exchange for the transfer of Plaintiff's business interest. *Id. at ¶ 28.* In 2015, a witness came forward showing that Plaintiff had been set up.  *Id. at ¶ 29.* Plaintiff first learned the identity of the

4

defendants in March, 2015. *Id.* The drug charges against Plaintiff were dismissed by the 15th Judicial District Attorney's Office. *Id.*

Plaintiff alleges that the defendants committed multiple criminal acts including, (a) criminal conspiracy, (a) bribery of police officers/public bribery, (c) acceptance of bribes, (d) trespassing with intent to break and enter a residence and/or trespass to commit felony malicious conduct/criminal mischief, (e) trespass to install a GPS which also constitutes an unlawful search and seizure and invasion of privacy, (f) extortion, (g) purchase and possession of illegal narcotics to plant on Plaintiff's vehicle, (h) racketeering, (I) use of interstate wire communications, (j) witness intimidation/tampering, (k) money laundering, (l) tax fraud/evasion, (m) prohibited acts Schedule II, (n) corrupt influencing, and all attendant inchoate offenses associated with the foregoing, including conspiracy, attempt and inciting a felony which constitute predicate acts under RICO, and establish a pattern of racketeering activity. *Id. at ¶ 31.* Plaintiff alleges these criminal acts, which started well over a year ago and continued through the date this action was filed, demonstrate a pattern of racketeering activity and establish a threat of continued racketeering activity. *Id. at ¶ 32.*

## II. Legal Standard

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any

attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).  However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Collins v. Morgan Stanley*, 224 F.3d at 498, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The allegations must be sufficient "to raise a right to relief above the speculative level," *Id.* at 555. and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 127 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Iqbal* at 678.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556.

### III. Law and Analysis

#### A. 42 U.S.C. § 1983 Claims

Defendants move the Court to reconsider its November 19, 2015 ruling which denied Knight and Kinch's Motions to Dismiss, *R. 20, 23*, as to Plaintiff's claims under 42 U.S.C. § 1983. *R. 42, 44.* The Court will deny Defendants' Motion in that regard.

#### B. 42 U.S.C. § 1985 Claims

Defendants  claim that Plaintiff's § 1985 claims were previously dismissed by the Court's November 19, 2015 ruling. *R. 42, 44.* Plaintiff concedes that he voluntarily dismissed the §1985 claims and that he inadvertently reasserted them in his amended complaint. Accordingly, the Court will not consider Plaintiff's § 1985 claims as they have been dismissed.

#### C. RICO claims, 18 U.S.C. § 1961-1968

Defendants argue that Plaintiff fails to state a claim under the Racketeer Influenced and Corrupt Organizations Act or "RICO," 18 U.S.C. § 1961-1968. "RICO claims require

(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). " 'Racketeering activity' consists of two or more predicate offenses," which are defined by the RICO statute itself. *Id*. A plaintiff alleging a RICO violation must plead the elements of the predicate offenses in addition to the elements of the RICO violation itself. *See Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).

The RICO statute proscribes categories that constitute racketeering activity. The first category consists of certain generically enumerated state law offenses that are "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). The second group of offenses includes specific offenses indictable under the federal criminal code, found at Title 18 of the United States Code. 18 U.S.C. § 1961(1)(B). The third group entails certain labor related acts indictable under the Title 29 of the United States Code. 18 U.S.C. § 1961(1)(C). The final category consists of offenses involving securities fraud and narcotics transactions. 18 U.S.C. § 1961(1)(D).

Defendants assert that of the multiple criminal acts allegedly committed, only Plaintiff's claims of "bribery, extortion, and dealing with a controlled substance under State law and racketeering under 18 U.S.C. § 1952" are listed as racketeering activity or predicate acts under RICO.

*1. Extortion*

Defendants argue that even though Plaintiff alleges extortion occurred, which is a

8

predicate act under 18 U.S.C. § 1961(1)(A), the facts set forth in the Complaint do not state

a crime under La. R.S. 14:66 as there must be some threat of harm to the person of the victim

or his family, or a threat of some other harm in order to obtain something of value.

Defendants contend that the alleged statements made by Defendants do not rise to the level

of extortion envisioned by La. R.S. 14:66.

La. R.S. 14:66 provides in pertinent part as follows:

A. Extortion is the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description. Any one of the following kinds of threats shall be sufficient to constitute extortion:

(1) A threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him.
. . .
(5) A threat to cause harm as retribution for participation in any legislative hearing or proceeding, administrative proceeding, or in any other legal action.

(6) A threat to do any other harm.

*Id.* Extortion is the communication of threats to another with the intention thereby to obtain

anything of value or any acquittance, advantage, or immunity of any description. *Dietz v.*

*Dietz*, 165 So.3d 342, 355, 2014-1164  (La.App. 3 Cir.,2015).

In response, Plaintiff cites the language in Paragraph 27 of its Complaint:

27. At some point, an employee of Knight Oil became aware of the scheme and enterprise referenced herein. After Bryan Knight's arrest, one or more of the defendants became aware of this employee's knowledge of the scheme. Thereafter, Manual and/or one or more of the co-defendants ***threatened this employee with bodily harm to him and his family if he went to the authorities.*** This act of extortion and witness intimidation was perpetrated in furtherance of the scheme and enterprise referenced herein and in order to

9

> protect all Defendants from criminal prosecution. In addition, Mark Knight, individually and on behalf of his co-conspirators has through the device of criminal ***extortion threatened the plaintiff herein with dire economic consequences in the event he continues prosecuting this litigation and/or fails to dismiss same***. This threat has been made on several occasions since the filing of the original complaint in this matter, June 3, 2015.

*Id.* (emphasis supplied).

Based on the foregoing allegations, the Court finds that Plaintiff has alleged that Defendants made threats of harm sufficient to allege an act of extortion under La. R.S. 14.66.

*2. Bribery*

As to Plaintiff's allegations of bribery, Defendants argue that the facts set forth in the Complaint do not state a crime under La. R.S. 14:188 because Defendants were not acting under color of law. In particular, they contend that the facts are insufficient to show that any money allegedly paid to Kinch and Jackson to influence their conduct was in relation to their official positions. La. R.S. 14:188 defines the crime of "Public bribery," in pertinent part, as follows:

> A. (1) Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
>
> (a) Public officer, public employee, or person in a position of public authority.
>
> . . .
>
> (2) The acceptance of, or the offer to accept, directly or indirectly, anything of apparent present or prospective value, under such circumstances, by any of the above named persons, shall also constitute public bribery.

10

> B. For purposes of this Section, "public officer", "public employee", or "person in a position of public authority", includes those enumerated in R.S. 14:2(9), and also means any public official, public employee, or person in a position of public authority, in other states, the federal government, any foreign sovereign, or any subdivision, entity, or agency thereof**. . . .**

*Id.*

Plaintiff's Complaint alleges that during the time period at issue, Corey Jackson ("Jackson") was a Louisiana State Trooper and Kinch was a Lafayette Parish Sheriff's Deputy assigned to the Metro Narcotics Task Force. Plaintiff alleges that Jackson and Kinch were acting in their capacities "as police officers," when they allegedly coordinated the scheme of planting illegal drugs and making telephone communications which resulted in Plaintiff's fraudulent arrest. The Complaint further alleges that KOT provided the funds and resources necessary to carry out the scheme, including to fund the bribes paid to Jackson and Kinch for their roles in the scheme as well as gifts given to the co-conspirators in further consideration for their roles in the scheme. In light of these allegations, the Court finds that Plaintiff has alleged a plausible claim that the crime of bribery was committed by defendants, specifically Jackson and Kinch.

*3. Racketeering*

Lastly, Defendants assert that Plaintiff has failed to allege the predicate act of racketeering under 18 U.S.C. § 1952, because his pleadings do not allege that the violator(s) traveled in interstate or foreign commerce or used the mail or any facility in interstate or foreign commerce. 18 U.S.C. § 1952, Interstate and foreign travel or transportation in aid

of racketeering enterprises, defines federal racketeering and provides in pertinent part:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to–
>
> (1) distribute the proceeds of any unlawful activity; or
>
> (2) commit any crime of violence to further any unlawful activity; or
>
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity . . . .

*Id.*

Plaintiff argues that the Complaint alleges Defendant's activities were in part conducted via cell phone across state lines. In paragraph 24, Plaintiff alleges that Kinch, while in Florida and on a conference call with co-defendants, made a call on another phone to Metro Narcotics directing the arresting officer to make the stop and arrest of Plaintiff at the location simultaneously given by the co-defendants on the other phone. *R. 47, ¶ 24.* "[U]se of a cell phone [ ] is an interstate commerce facility." *Caillier v. U.S.*, 2015 WL 1959477, at *15 (W.D.La.,2015); *U.S. v. Anderson*, 560 F.3d 275, 280 (5th Cir. 2009) (evidence of cell phone bills to prove an actual affect on interstate commerce).

Plaintiff further argues that RICO does not mandate that federal racketeering is the only predicate act recognized. RICO specifically provides "'racketeering activity' means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances act [21 U.S.C. §802]) which is chargeable under

12

state law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961, *et seq*. As provided in the foregoing, Plaintiff has shown plausible claims for state law extortion and bribery in order to allege "racketeering activity."

    *3. Standing to Bring a RICO Claim*

    Defendants contend that Plaintiff lacks standing to bring a RICO claim because he has failed to allege that he suffered a tangible loss to his property or business interest in KOT or that a RICO predicate act was a proximate cause of injury to his property or business. In particular, they contend: Plaintiff's claim for damages due to mental anguish are for personal injury; Plaintiff's claim for property damage due to his electrical wire being cut is not due to a RICO predicate act; and Plaintiff's claim for damages to his interest in KOT and related businesses are speculative, such that Plaintiff has not set forth any damages recoverable under RICO.

    RICO provides a remedy to "[a]ny person injured in his business or property." 18 U.S.C. § 1964(c).  A civil RICO plaintiff has standing only if he can allege that he has suffered an injury to his business or property caused by the defendants' predicate criminal acts. *See Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003). A RICO plaintiff must satisfy two elements: (1) injury and (2) causation *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998). "The phrase 'injury to business or property' excludes personal injuries. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339(1979)." *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 422 (5th Cir. 2001). "Injury to mere expectancy interests or to

an intangible property interest is not sufficient to confer RICO standing." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998).

A shareholder does not have standing to bring a direct cause of action under federal law when the only damage alleged is the diminution in the value of the corporate shares." *Gaff v. FDIC*, 814 F.2d 311, 317 (6th Cir. 1987). A RICO plaintiff alleging destruction of the value of his stock lacks standing because his injury was not distinct from the corporation's injury. *Crocker v. Federal Deposit Insurance Corp.*, 826 F.2d 347, 348-52 (5th Cir. 1987) (minority shareholders lacked standing under RICO to sue because they had not alleged any injury to their property that was distinct from any injury the corporation may have suffered.).

Plaintiff alleges he is entitled to recover damages that occurred as a direct result of the Defendants' wrongful conduct including, legal debt related to the criminal matter, costs of posting bond pending his criminal trial and damages from cutting his residential electrical line. The measure of damages under civil RICO is the harm occasioned as a result of the predicate acts. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985). Under RICO, "the directly injured party should receive a complete recovery." *Carter v. Berger*, 777 F.2d 1173, 1176 (7th Cir.1985). A civil RICO plaintiff need not allege or prove injury beyond an injury to business or property resulting from the underlying acts of racketeering. *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir. 1984). The Fifth Circuit has upheld RICO claims where the only apparent injuries were those directly resulting from the predicate offenses. *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160,

1170–71 (5th Cir.1984) (abrogated on other grounds) (allowing a claim for attorney's fees as "an integral part of the relief sought by the civil RICO plaintiff." Other circuits have done the same. *See e.g. Haroco, Inc.*, 747 F.2d at 397; *Bennett v. Berg*, 685 F.2d 1053, 1058–59 (8th Cir.1982).

Plaintiff also argues he is entitled under RICO to recover for damages to his business and property. Plaintiff's Complaint indicates that KOT is a family owned, privately held limited liability company. Knight does not dispute that KOT is not a corporation with publically traded shares of stock. It is axiomatic that, as a private company, KOT must rely on its own capital rather than public investors. Accepting the factual allegations of Knight's alleged scheme to takeover Plaintiff's inherited interest in the family business as true, Knight's funding of the actions in furtherance of the scheme resulted in the reduction of KOT's capital and thereby reduced Plaintiff's tangible property. In other words, by reducing the net worth of KOT, Plaintiff's net worth was also diminished.

As Plaintiff's allegations establish a plausible claim that he suffered an injury to his business or property which was caused by the defendants' predicate criminal acts, he has standing to pursue this action.

*4.* *"Pattern" of Racketeering*

To establish a RICO pattern it must be shown that the predicate acts themselves amount to, or otherwise constitute, a threat of continuing racketeering activity. "Continuity" is both a closed-ended and open-ended concept, referring either to a closed period of repeated

conduct, or to past conduct that by its nature projects into the future with a threat of repetition. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. Congress was concerned in RICO with long-term criminal conduct. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-242 (1989).

Defendants state that "plaintiff himself admits, 'the main thrust of the scheme was to have Plaintiff arrested on felony drug charges.'" Relying on the aforesaid jurisprudence, they argue that the alleged acts of racketeering activity are nothing more than multiple acts in a short period of time involving one victim and relating to one basic transaction. As such, Defendants contend there is no pattern of racketeering activity.

"Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case." *H.J. Inc.*, 492 U.S. at 242. "The limits of the relationship and continuity concepts that combine to define a RICO pattern, and the precise methods by which relatedness and continuity or its threat may be proved, cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a "pattern of racketeering activity" exists. *Id.* at 243.

Here, Plaintiff's alleges that Defendants engaged in a scheme lasting over a year involving numerous and repeated criminal acts, from the elaborately stated drug conviction scheme, to the attempts of extortion of Plaintiff and his employees. It cannot be said that such

16

actions would not have continued without the exposure and arrest of Knight and the other defendants. Nonetheless, Plaintiff alleges, the extortion continued after this action was filed in the form of threats against Plaintiff of financial ruin.  Plaintiff has sufficiently alleged a pattern of racketeering activity against Defendants to sustain his RICO claims.

*5. § 1962 Subsection (a) Claims*

Citing the language of 18 U.S.C. § 1962(a), Defendants argue that Plaintiff's RICO claims fail because he does not allege that Knight "received income from a pattern of racketeering activity, invested in, or conducted the affairs of, any enterprise involved in interstate or foreign commerce through a pattern of racketeering activity, or that [Plaintiff] was damaged as a result of income derived from the enterprise." *R. 52-1.*

The "RICO subsections, [18 U.S.C. § 1962 (a), (b), (c), (d)] state, in their simplest terms, that:

> (a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
>
> (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;
>
> (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and
>
> (d) a person cannot conspire to violate subsections (a), (b), or (c).

*Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007). "Regardless of subsection, RICO claims under § 1962 have three common elements: (1) a person who engages in (2) a pattern

of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise."*Id*. Plaintiff admits that his claims do not fall under subsection (a) of § 1962. Rather, Plaintiff submits his claims fall squarely within the provisions of subsections (b), (c) and (d).

As to Plaintiff's claims under those subsections, Defendants further argue RICO requires that a plaintiff establish the existence of an enterprise which is "an entity separate and apart from the pattern of activity in which it engages." *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). They contend that the "enterprise" cannot be both Defendants and KOT, as alleged by Plaintiff.

Defendants again fail to distinguish the subsections of § 1962.  Courts have generally concluded that, while the culpable person and the RICO enterprise may be identical in subsections (a) and (b), subsection § 1962(c) contemplates a separate "person" and "enterprise" because the enterprise may very well be the victim of the racketeering activity. In *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404 (5th Cir. 1990), the Fifth Circuit distinguished a violation under § 1962 subsection (c) from subsection (b). The court stated, "The rationale for this distinction comes from the language of the statute which deals with a 'person employed by or associated with any enterprise.' 18 U.S.C. § 1962(c).  This language shows that Congress intended for the RICO person and the enterprise to be separate entities." The court continued, "In contrast to the language of subsection (c) which 'requires a relationship between the person and the enterprise, subsection [ ... ] (b) require[s] only the

18

use of an enterprise by a person.' Thus the RICO person and the enterprise need not be distinct for a person to be held liable under subsection (b)." *Id. See also Haroco, Inv. V. Am. Nat'l Bank & Trust Co. Of Chi.*, 747 F.2d 384, 400 (7th Cir. 1984) (Congress did not intend to allow the same entity to be both the person and the enterprise under section 1962(c) because the result could be that the entity was employed by or associated with itself.).

In opposition to Defendants' argument under § 1962(c), Plaintiff contends there are multiple and distinct defendants involved in the association-in-fact enterprise which, as a collective entity, has an identity separate and apart from that of the individual defendants. In particular, paragraph 13 of the Complaint alleges in pertinent part,

> The enterprise in this case is the association-in-fact of the individual Defendants with Knight Oil, a legitimate business. Each member of the enterprise plays a different role in the scheme. Each also acts in the ordinary course of affairs as separate individuals, outside of the RICO scheme in this case. Knight Oil engages in oil industry service, exploration and development activities outside of the RICO enterprise. The individual Defendants also engage in their individual activities outside of the enterprise. However, the pattern of racketeering activity in this case was conducted by the Defendants in concert with each other in a coordinated and organized fashion, in order to carry out the scheme.

Based on these allegations, Plaintiff has alleged plausible claims under § 1962(b)(c) and (d).

*6. Enterprise Under RICO*

"A RICO complaint must identify the enterprise." *Crichton v. Golden Rule Insurance Company*, 576 F.3d 392, 398 (7th Cir. 2009). An association-in-fact enterprise theory requires that the association-in-fact enterprise and the person sought to be held liable be sufficiently distinct. *Id.* This is because RICO "liability depends on showing that the defendants

conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs. *Id.*

Defendants contend that Plaintiff has identified two enterprises, the association-in-fact between Knight and the three co-defendants, and also KOT. Defendants further contend that because Plaintiff has not alleged any facts to show that the association-in-fact is separate and distinct from Knight and his co-defendants, Plaintiff has failed to properly allege an enterprise under RICO.

Plaintiff has defined his RICO claims as those under subsections (b), (c) and (d), and asserts that his Complaint alleges an "association-in-fact" enterprise between the individual Defendants and KOT, a legitimate business. *R. 47, ¶ 13.* As stated in the allegations provided in the foregoing, each member of the enterprise played a different role in the scheme, acting in the ordinary course of affairs as separate individuals outside of the RICO scheme, and engaging in their individual activities outside of the enterprise. *Id.* The pattern of racketeering activity was conducted by the Defendants in concert with each other in a coordinated and organized fashion in order to carry out the scheme. *Id.* Plaintiff further asserts that its pleadings allege that the RICO enterprise is the association between all Defendants and KOT. *Id.*

Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in a contract of any enterprise which is engaged in, or the activities

of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Typically, such an injury is shown where "the owner of a [legitimate] enterprise infiltrated by the defendant as a result of racketeering activity is injured by the defendant's acquisition or control of [the] enterprise." *Casper v. Paine Webber Group*, 787 F.Supp. 1480, 1491(D.N.J.1992) (citing *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1060 n. 12 (N.D.Cal.1991)).

Section 1962(c) makes it unlawful for "any person ... associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Because RICO defines "person" as including "any individual or entity capable of holding a legal or beneficial interest in property," *id*. § 1961(3), corporations as well as individuals can be liable if they conduct an enterprise's affairs through a pattern of racketeering activity. The enterprise as such generally faces no section 1962(c) RICO liability; indeed it may be the innocent vehicle through which unlawful activity is carried out. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001) ("RICO both protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful ... activity is committed.'"). When the enterprise is an  association-in-fact, members of the association may be both part of the "enterprise" and liable as "persons" under RICO if they conduct the enterprise's affairs through racketeering activity. *See, e.g., United States v. Richardson*, 167 F.3d 621, 626 (D.C.Cir.1999) (upholding conviction of defendant

member of association-in-fact enterprise); *Kushner*, 533 U.S. at 163 (CEO and sole shareholder could be RICO person and also part of RICO enterprise consisting of himself and the company).

Plaintiff alleges an "enterprise" existed between Defendants and KOT which engaged in racketeering activity, with the common goal of Knight obtaining a majority interest in KOT, a legitimate enterprise. Based on these allegations, Plaintiff has sufficiently identified the "enterprise" and has met the distinctiveness requirement between "person" and the "enterprise."

### 7. Supplemental Jurisdiction Over State Law Claims

Plaintiff has brought Louisiana state law claims for RICO, malicious prosecution, false imprisonment, and intentional infliction of mental anguish. In the event Plaintiff's RICO claims are dismissed, Defendants assert that the Court should use its discretion and decline to exercise supplemental jurisdiction and dismiss the state law claims without prejudice. As the undersigned will recommend that the Motions To Dismiss be denied, the Court pretermits discussion of this issue as moot.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Motion To Dismiss Complaint, First Supplemental and Amending Complaint, and Second Supplemental and Amending Complaint filed by defendant, Mark E. Knight  [Rec. Doc. 52] and the Motion To Dismiss Original, First and Second Supplemental and Amending Complaints filed by defendant Jason

Kinch  [Rec. Doc. 53] be *DENIED*.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

THUS DONE AND SIGNED this 1st day of May, 2016.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE